## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ANA SANTOS**

    *Plaintiff,*         Case No:

    v.

**CLARITY SERVICES, INC.,**        **JURY TRIAL DEMANDED**

    *Defendant.*

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Ana Santos** ("**Ms. Santos**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Clarity Services, Inc.** ("**Clarity**" or "**Defendant**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action for damages brought by Ms. Santos against Clarity for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.    Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3.    The Defendant is subject to the provisions of the FCRA and to the jurisdiction of this Court, pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4.     Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and / or caused by the Defendant within Hillsborough County, Florida, which is in the Middle District of Florida.

<u>**PARTIES**</u>

<u>**Ms. Santos**</u>

5.     **Ms. Santos** is a natural person residing in Brandon, Hillsborough County, Florida.

6.     Ms. Santos is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

<u>**Clarity**</u>

7.     **Clarity** is a Delaware corporation with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

8.     Clarity is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

9.     Clarity is a *Consumer Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and

uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and internet communications.

## FACTUAL ALLEGATIONS

### Clarity Produces Inaccurate Consumer Reports Regarding Ms. Santos

10.    At some point in or prior to 2019, Clarity began maintaining a credit file on Ms. Santos.

11.    Clarity, a CRA, programs its systems to acquire and report as much information as possible, with little regard to the quality of the data, or if the data could even possibly be true.

12.    Indeed, a good portion of the data contained in Ms. Santos' Clarity credit file belongs to another person.

13.    Between September 16, 2022 and June 5, 2023, Clarity sold at least 20 reports stating Plaintiff was "Ulices Santos." **SEE PLAINTIFF'S EXHIBIT A.**

14.    Clarity also included credit information which belongs to Ulices Santos into Ms. Santos' credit report.

15.    Clarity included credit information concerning length of employment history, dates of pay, bank account information, and other data which belong to Ulices Santos into Ms. Santos' credit file.

16.    Additionally, Clarity reported over eight different dates of birth for Ms. Santos, which span 35 years, from 1959 to 1994. *Id.*

17.    On information and belief, Clarity's file on Ms. Santos is an example of a *mixed file*.

18.    A *mixed file* is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

19.    On information and belief, the *mixed file* resulted from Clarity's reckless and improper methods by which it connects data reported to it by various furnishers and incorporates that data into its files.

20.    In an aggressive attempt to match every record reported, Clarity's automated system often erroneously match information to a consumer's credit file with minimal commonalities.

21.    On information and belief, Clarity often matches data with the information in its files based on a single data point, such as the same year of birth or same last name, instead of utilizing all of the information provided to it.

22.    These erroneous matches occur even when the data from Clarity's furnishers of information contains substantially different identifying information from that of the actual consumer.

23. Clarity knows that its automated systems erroneously match tradeline information to incorrect consumers' credit files with minimal commonalities.

24. Despite such knowledge, Clarity has declined to correct its systems.

25. Clarity also included data into Ms. Santos' credit file which it knew had no possibility of being true.

26. Clarity included a work phone number of 813-XXX-2477[1] but also many other numbers which do not relate to Ms. Santos, including "813-XXX-7761 ext. 813XXX7761" and "813-XXX-7761 ext. 000," as well as other numbers similar to her work number but off by one or two digits.

27. All told, Clarity reported Ms. Santos had 11 different work phone numbers in the recent past, and four different personal phone numbers, for a total of 15.

28. On June 15, 2024, Clarity reported that Ms. Santos "cell" phone number was 813-XXX-2477, which is a landline and not a cell phone number, and belongs to a business, not a person.

29. On April 8, 2024 and again on October 24, 2024, Clarity reported Ms. Santos' cell phone number was (814)-XXX-1601, which is not a phone number Ms. Santos ever used and appears to be a typographical error, with Tampa's (813) area

---

[1] Clarity included the full phone number, which has been redacted here for privacy purposes.

code intended to be entered, although Ms. Santos does not use any phone number similar to this.

30.    On March 5, 2024, Clarity reported Ms. Santos' cell phone number was (352) XXX-6642, although this number does not belong to her either.

31.    Ms. Santos has had the same personal and work number for the last five years.

32.    Clarity's credit scores heavily consider the number of changes to a consumer's work history, phone number, bank account information, and other information provided on credit applications.

33.    Clarity's Credit Score for Ms. Santos on January 6, 2025 was 813 out of a possible 951. **SEE PLAINTIFF'S EXHIBIT B.**

34.    One of the top factors as to why her score was not higher was "Number of changes in application information," *e.g.*, length of time at address, employer, driver's license number, employer address and phone number, and so on. ***Id.***

35.    Another top factors as to why her score was not higher was "Number of changes in home phone information," *e.g.*, the fact that she had four different cell phone numbers reported for her in a period of six months, even though, in reality, she had the same phone number the entire time. ***Id***.

36.    Thus, Clarity's false reporting, by its own metrics, significantly and negatively impacted her credit score.

37.    The data Clarity reports ostensibly comes from credit applications submitted by the consumer herself.

38.    In reality, the data overwhelmingly comes from predatory online lenders who make loans at triple-digit interest rates, who purchase consumer's information from various data brokers and lead generators.

39.    As an example, the "(814)" phone number was reported by "CCBank/Integra," or Integra Credit, a lender which makes loans at interest rates exceeding 200% per year, even though these rates constitute felony loansharking in many states, including Florida.

40.    Ms. Santos never applied for credit directly with Integra Credit.

41.    Integra Credit purchased Ms. Santos' data from a data broker, who likely purchased it from a "lead generation" website which in turn may have purchased it from the operator of a website designed to collect the personal information of consumers who may be looking for a loan online.

42.    Few, if any, of these brokers and lead generators utilize any data standardization metrics and, due to differences in software and systems used from broker to broker, some data may be altered or distorted in the transfer; hence, for

example, Ms. Santos was reported with dates of birth of June 19, 1959, June 19, 1970, and June 19, 1994 – none of which are even remotely correct.

43.    Clarity also has no data standardization procedures in place.

44.    Hence, a data broker may list a consumer's income as a weekly salary, but Clarity imports this data as a monthly salary, creating the impression the consumer makes less than the poverty level even when this is not true.

45.    Indeed, Ms. Santos' Clarity report shows a "monthly" income of $1,000 reported on December 1, 2020 by "Credit Ninja/FMS," although this was intended to be reported as a weekly income.

46.    Ms. Santos never applied for credit with Credit Ninja, an online lender which makes loans at interest rates exceeding 100% annually, and Credit Ninja's information about Ms. Santos was obtained from other sources which likely obtained it from other sources themselves.

47.    Credit Ninja also reported a four-digit-long Florida driver's license number, data which Clarity knew, or should have known, could not even possibly be true as Florida driver's license nomenclature is a letter followed by 12 digits, for a total of 13 characters.

48.    The third or fourth-hand nature of the data Credit Ninja obtained resulted in its reporting of patently false information, which was published by Clarity, without question.

49.    In other instances, Clarity reported data inherently contradictory.

50.    As an example, on January 21, 2020, at 12:34:10 pm, Clarity reported that Ms. Santos has been residing at her address for 24 months; yet, 10 seconds later, on January 21, 2020 at 12:34:20 pm, Clarity reported that Ms. Santos had resided at her current address for four months.

51.    Then, on January 21, 2020, at 12:35 pm, Clarity reported that Ms. Santos had resided at her current address for 12 months; on January 21, 2020 at 12:37 pm, Clarity reported that Ms. Santos had resided at her current address for 0 months. **SEE PLAINTIFF'S EXHIBIT A**.

52.    As is virtually axiomatic, all the above cannot possibly be true. Clarity knew this data could not possibly be true, simultaneously, yet published the data nonetheless.

53.    On January 21, 2020, Clarity reported that Ms. Santos's housing status was "TRUE." ***Id.***

54.    Clarity states this information was reported by Net Credit, an online lender which makes loans at 100% interest rates and higher; Net Credit, though, did not actually report a housing status of "TRUE."

55.    The "TRUE" value is a placeholder, dummy value automatically inserted by Clarity's systems when information is missing or unreadable, although Clarity does not disclose this to readers of its reports or to consumers.

56. On January 21, 2020 Clarity reported Ms. Santos held an occupation of "F." *Id.*

57. The value "F" is also used as a dummy value or placeholder when Clarity's systems cannot read or understand the occupational data reported to it, and thus inserts "F" with no mention that it is not real and verified information.

58. On August 18, 2021 Clarity reported that Ms. Santos had a net monthly income of "$0.00." *Id.*

59. The "$0.00" value is also a dummy value or placeholder, although this is not disclosed and implies Ms. Santos was unemployed with no income at that time.

60. A lender who obtains a credit report indicating a consumer has a $0 per month income is unlikely to grant a loan since the consumer would appear to have no ability to repay it.

61. Thus, not only do Clarity's systems not consider if data could even potentially be true, they are also literally ***programmed to insert false information*** into consumer credit files in certain circumstances, despite the FCRA's mandate it utilize procedures designed to ensure maximum possible accuracy of information.

62. At no point does Clarity disclose to consumers or readers of Ms. Santos' credit reports that some data is made-up, placeholder data, nor is it reasonable to even have such procedures.

63.     Even when Clarity does not insert placeholder data, the data it does report is at best ambiguous and, to most people, incomprehensible.

64.     For example, Clarity reported on August 27, 2020 that Ms. Santos' pay frequency is "B." *Id.*

65.     Presumably, "B" means bi-weekly, although it also reports "bi-weekly," "biweekly," and "just biweekly," as if these four values all mean something different.

66.     The aforementioned highlights Clarity's abject lack of any data standardization procedures.

67.     This is to the detriment of a consumer like Ms. Santos, since Clarity's credit scores view pay frequencies of "B," "bi-weekly," "biweekly," and "just biweekly" as four different values, and interpret this as changes to the consumer's pay frequency which then lowers the credit score.

68.     Clarity also reported Ms. Santos' pay frequency was "nothing," meaning, apparently, that she was employed but never paid. *Id.*

69.     Around January 2020, Clarity began incorporating information into Ms. Santos' credit file stating she had more than one driver's license active, which she does not.

70.     Clarity reported on January 17, 2020 that Ms. Santos has another driver's license ending in -3868, which she does not. *Id.*

71.    Clarity had no basis to believe this could even possibly be true, as the alternate license contains only 10 digits, not the required 13.

72.    Clarity reported on December 1, 2020 that Ms. Santos had a third driver's license, the entire number of which was "S532." *Id.*

73.    Once again, Clarity knew this could not possibly be accurate in any capacity, as no such thing as a four-digit driver's license exists in any State in the Union.

74.    Clarity's credit disclosure to Ms. Santos lists only the last four digits of each driver's license number, with the remaining digits redacted.

75.    Upon information and belief, Clarity provided the full, unredacted license numbers to creditors who obtained Ms. Santos' credit report.

76.    Ms. Santos did not ask Clarity to redact any of the information in her disclosure, nor did Clarity have any authority to do so per the FCRA when it provides that information to creditors in full.

77.    Clarity, a subsidiary of Experian Information Solutions ("Experian"), one of the largest CRAs in the world, operates in stark contrast to its parent company.

78.    While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs

and serves as a *lingua franca* – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

79.     Records from Clarity show it sold at least 75 reports regarding Ms. Santos in the past two years.

80.     Each of these reports contained false and preposterous information about Ms. Santos' employment history, housing status, income, work address, and more.

81.     The FCRA is clear in its requirement that Clarity, as a CRA, is required to prepare accurate reports:

> Accuracy of Report.   Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. *15 U.S.C. §1681e(b).*

82.     Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Santos.

83.     Clarity was thus aware that when it sold reports on Ms. Santos in the last two years that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

### Clarity Fails to Meaningfully Disclose Legally-Required Information

84.     On December 29, 2024, Ms. Santos requested her Clarity consumer credit disclosure.

85. Upon receipt of Ms. Santos' request, Clarity was required to "clearly and accurately" disclose all information in Ms. Santos' file at the time of her request, including identification of *each* person, including an end user if the report was obtained by a reseller, who obtains a consumer report from Clarity within the prior year *for any purpose.* See 15 U.S.C. § 1681g(a)(3)(A)(ii).

86. "Identification" is defined in the FCRA as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." 15 U.S.C. § 1681g(a)(3)(B)(i).

87. Frequently, Clarity fails to fulfill its legal obligations in disclosing this data, often disclosing an incomprehensible string of characters which virtually no one could comprehend.

88. For example, Clarity's disclosure shows an inquiry made on September 30, 2024 as such:

| 9/30/2024 10:55:40 am EDT kgwy9fr7yj | Credit Application | Online Line of Credit | CCB/TLS/MK Analytics/Propel |

**SEE PLAINTIFF'S EXHIBIT C.**

89. Clarity disclosed what appears to be four end users concerning a single inquiry; moreover, "CCB/TLS/MK Analytics/Propel" is not the name of any creditor readily ascertainable to a reasonable person. A Google search for this term produces results that are meaningless. No phone number or address(es) are

provided by Clarity. This labeling does not clearly identify what entity made the inquiry as is required by law.

90.    Clarity has been sued numerous times in the past for failing to disclose the names of persons or entities obtaining credit reports as required by law.

91.    The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See*, *e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.

92.    Further, the lack of accurate, full disclosure of who had obtained her credit report caused Ms. Santos great frustration and emotional distress and made her concerned she was the victim of fraud or identity theft.

93.    Clarity has been failing to provide the legally-required trade names of persons obtaining credit reports, written in full, for at least 10 years, and often substitutes impossible-to-understand shorthand instead.

94.    Clarity thus failed to use reasonable procedures when preparing credit reports sold to each lender.

95.    Clarity also failed to use reasonable procedures when preparing a consumer disclosure to provide to Ms. Santos upon her request.

96.    As a result of the Defendant's actions, Ms. Santos has suffered damages, including lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

97.    Ms. Santos has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

98.    Ms. Santos adopts and incorporates paragraphs 1 – 97 as if fully stated herein.

99.    Clarity violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Santos when Clarity sold consumer reports containing information concerning another individual and erroneous information about her housing status, employer, income, and more.

100.    Clarity's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

101.    Clarity's policies could reasonably be foreseen to cause harm to Ms. Santos.

102.    As a result of its conduct, Clarity is liable to Ms. Santos pursuant to the FCRA for the greater of Ms. Santos' actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Santos respectfully requests this Honorable Court enter judgment against Clarity for:

a.    The greater of Ms. Santos' actual damages or statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

### COUNT II
### <u>NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)</u>
### <u>(Pled in the Alternative to Count I)</u>

103.    Ms. Santos adopts and incorporates paragraphs 1 – 97 as if fully stated herein, and pleads this count strictly in the alternative to Count I.

104.    Clarity violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Santos when Clarity sold consumer reports containing

information concerning another individual and erroneous information about her housing status, employer, income, and more.

105.   Clarity owed Ms. Santos a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Santos.

106.    Clarity breached this duty when it sold consumer reports containing information concerning another individual and erroneous information about Ms. Santos' housing status, employer, income, and more.

107.   Clarity thus acted negligently, and Ms. Santos is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Santos respectfully requests this Honorable Court enter judgment against Clarity for:

a.    Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    Such other relief that this Court deems just and proper.

**COUNT III**
**WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)**

108.   Ms. Santos adopts and incorporates paragraphs 1 – 97 as if fully stated herein.

109.    Clarity violated **15 U.S.C. § 1681g(a)(3)(A)(ii)** when it failed to identify each person, including the end-user, when applicable, that procured Ms. Santos' consumer report during the one-year period preceding the date on which the request was made. As described herein, more than a dozen inquiries were disclosed with false information, and/or utilized incomprehensible shorthand, and fell far short of being "written in full" as required.

110.    Clarity's conduct was thus willful and intentional, or alternately, was done with a reckless disregard for its duties under the FCRA.

111.    Clarity is therefore liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Santos' actual damages and statutory damages not to exceed $1,000 *for each violation*, punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Santos respectfully requests this Honorable Court to enter judgment against Clarity for:

a.    The greater of statutory damages of $1,000 per incident and Ms. Santos' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and,

d.    Such other relief that this Court deems just and proper.

## COUNT IV
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)
### (Pled in the alternative to Count III)

112.    Ms. Santos adopts and incorporates paragraphs 1 – 97 as if fully stated herein, and pleads this count strictly in the alternative to Count III.

113.    Clarity violated **15 U.S.C. § 1681g(a)(3)(A)(ii)** when it failed to identify each person, including the end-user, when applicable, that procured Ms. Santos' consumer report during the one-year period preceding the date on which the request was made. As described in the foregoing, more than a dozen inquiries were disclosed with false information, and/or utilized incomprehensible shorthand, and fell far short of being "written in full" as required.

114.    Clarity's conduct was negligent, and could easily be foreseen to cause harm to Ms. Santos, and did cause harm to Ms. Santos.

115.    Clarity's conduct was negligent, and Clarity is therefore liable, pursuant to 15 U.S.C. § 1681o, for Ms. Santos's actual damages.

**WHEREFORE**, Ms. Santos respectfully requests this Honorable Court to enter judgment against Clarity for:

a.    Ms. Santos's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on January 10, 2025**,** by:

**SERAPH LEGAL, P.A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-3434
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A    Ms. Santos' Clarity Report, December 29, 2024, Housing, Income, and Employment Information – Excerpts
B    Ms. Santos' Clarity Credit Score, January 7, 2025, Scoring Information – Excerpt
C    Ms. Santos' Clarity Report, December 29, 2024, Inquiries – Excerpt